UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEARBORN STREET BUILDING
ASSOCIATES LLC,

        Plaintiff,

vs.

D & T LAND HOLDINGS, LLC;
PCI HOLDINGS, LLC; and,
THE HUNTINGTON NATIONAL
BANK,

        Defendants.
                                   /

Case No. 1:07-cv-1056

Hon. Hugh W. Brenneman, Jr.

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

On June 9, 2007, the court entered an opinion and order denying plaintiff Dearborn Street Building Associates LLC's ("Dearborn") motion for partial summary judgment and dismissing Count III of its amended complaint. This matter is now before the court on Dearborn's motion for reconsideration of that order (docket no. 31).

    **I.**    **Background**

Dearborn sets forth the following allegations in its first amended complaint. On January 19, 2007, Dearborn obtained a $500,000.00 judgment against defendant PCI Holdings, LLC ("PCI") in the Circuit Court of Cook County, Illinois (referred to herein as the "Illinois Judgment"). On April 10, 2007, plaintiff filed the Illinois Judgment in the Muskegon County Circuit Court (14th

Circuit Court), captioned *Dearborn Street Building Associates, LLC v. PCI Holdings, LLC*, No. 07-45166-PZ, so that it could enforce its Illinois judgment in Michigan.[1]

On or about May 2, 2007, PCI sold certain real estate located in Kent County, Michigan, to defendant D & T Land Holdings, LLC ("D&T"). The closing statement for the real estate sale reflected a purchase price of $890,000.00 for the real estate, which was financed by mortgage money obtained from defendant The Huntington National Bank ("Huntington"), and a promissory note from D&T to PCI in the amount of $155,143.64. On May 29th, at Dearborn's request, the 14th Circuit Court issued a writ of garnishment against D&T as a garnishee defendant. Dearborn also pursued its collection efforts by recording a notice of judgment lien with the Kent County Register of Deeds on June 12th. In a garnishee disclosure dated June 19th, D&T stated that it was not indebted to PCI. *See* Exh. A to Amended Complaint.

Approximately four months later, on October 22, 2007, Dearborn filed the present federal diversity action. The amended complaint contains three counts. In Count I, Dearborn alleges that the real estate sale between PCI and D&T was made with actual intent to hinder, delay or defraud PCI's creditors in violation of the Uniform Fraudulent Transfer Act ("UFTA"), M.C.L. § 566.34. In Count II, Dearborn alleges that PCI did not receive reasonably equivalent value in exchange for the sale and was either insolvent, or became insolvent as a result of the sale, in violation of UFTA, M.C.L. § 566.35. In Count III, entitled "Garnishment," Dearborn contends that D&T's garnishee disclosure in the state court case is false. Dearborn seeks the same relief in all three counts: a court determination that the sale by PCI to D&T was a fraudulent transfer under

---

[1]Dearborn filed the Illinois Judgment pursuant to Michigan's version of the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), M.C.L. § 691.1171 *et seq.*

2

UFTA; avoidance of the transfer of the property; a court-ordered sale of the property to satisfy the June 12, 2007 judgment lien; an order directing D&T to pay Dearborn the sum of no less than $155,143.64 (representing the amount D&T agreed to pay to PCI in the promissory note for the property and which was payable to Dearborn pursuant to the writ of garnishment); and unspecified equitable relief with respect to Huntington's mortgage lien.

On June 9, 2008, the court entered an opinion and order denying Dearborn's motion for partial summary judgment on Count III and dismissed this count for lack of jurisdiction. In reaching this decision, the court determined that it could neither enforce the state court garnishment pursuant to Fed. R. Civ. P. 69, nor register the underlying state court judgment as a federal judgment pursuant to 28 U.S.C. § 1963 for execution in federal court under Rule 69.

**II.     Discussion**

Our local rule provides that on a motion for reconsideration, a movant "shall not only demonstrate a palpable defect by which the Court and the parties have been mislead, but also show that a different disposition of the case must result from the correction thereof." W.D. Mich. LCivR 7.4(a). A defect is palpable if it is easily perceptible, plain, obvious, readily visible, noticeable, patent, distinct or manifest. *See Compuware Corp. v. Serena Software International, Inc.*, 77 F. Supp.2d 816, 819 (E.D. Mich. 1999).

Here, contends that the "palpable defect" is the fact that the court dismissed Count III on a ground that had not been raised and briefed by the parties, i.e., lack of jurisdiction. (Plaintiff acknowledges the issue was discussed by the parties at oral argument where it was raised by the court.)

The court disagrees this was a "palpable defect." Fed. R. Civ. P. 12(h)(3) explicitly provides that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." As the court stated in the opinion denying Dearborn's motion for partial summary judgment:

> "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute. . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted.) The existence of subject matter jurisdiction may be raised at any time, on a party's motion or *sua sponte* by the court. *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005).

The court could properly raise the issue of subject matter jurisdiction *sua sponte*. While Dearborn disagrees with the court's decision in this matter, it has failed to demonstrate a palpable defect in the court's order dismissing Count III.

Finally, Dearborn's motion for reconsideration raises a new legal issue. In its motion for partial summary judgment, plaintiff asserted that because this court had diversity jurisdiction over the controversy it had the right to collect the Illinois Judgment under the court's diversity jurisdiction, 28 U.S.C. § 1332, and Fed. R. Civ. P. 69. *See* Plaintiff's Corrected Reply Brief at pp. 4-5. Now, Dearborn asserts that this court has supplemental jurisdiction over the garnishment action pursuant to 28 U.S.C. § 1367(a), because the garnishment constitutes a claim that is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Plaintiff's Brief at p. 4. The court rejects this argument. Dearborn cites no authority, and this court is aware of none, which supports

its assertion that a federal court can exercise § 1367 supplemental jurisdiction to enforce a state court judgment that is the subject of a pending state court garnishment action.[2]

Furthermore, Dearborn commenced a garnishment proceeding against D&T in the Michigan state courts before filing this federal action. The appropriate mechanism to bring a pending state court action into federal court is removal pursuant to 28 U.S.C. § 1441, which provides in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

§ 1441(a). *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005) ([w]hile § 1332 allows plaintiffs to invoke the federal courts' diversity jurisdiction, § 1441 gives defendants a corresponding opportunity); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 190 (9th Cir. 1983) (by enacting § 1441, "Congress saw the importance of a federal court system and created a

---

[2] In *Hudson v. Coleman*, 347 F.3d 138, 141-42 (6th Cir. 2003), the Sixth Circuit explained the nature of a federal court's ancillary and supplemental jurisdiction:

> [I]t is necessary to understand that there are two situations in which a court may exercise ancillary jurisdiction over a claim otherwise not within the jurisdiction of the court: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees. [Citations and internal quotes omitted.] The first category of ancillary jurisdiction identified above has largely been codified in the supplemental jurisdiction statute, 28 U.S.C. § 1367. The second category of ancillary jurisdiction is generally referred to as "ancillary enforcement jurisdiction."

Dearborn's attempt to enforce the Illinois state judgment through the garnishment claim does not fall within the federal court's "ancillary enforcement jurisdiction," which acknowledges a federal court's inherent power to enforce its own judgments. *Peacock v. Thomas*, 516 U.S. 349, 356 (1996); *Hudson*, 347 F.3d at 142. Because this ancillary jurisdiction "has not extended beyond attempts to execute, or guarantee the executability of a federal judgment," *Hudson*, 347 F.3d at 142, Dearborn cannot rely on this category of ancillary jurisdiction enforce the Illinois state court judgment.

mechanism for a defendant to gain access to a federal tribunal though the plaintiff brings his action in state court"). Defendant D&T, however, has not sought to remove the garnishment action to federal court.  Even if D&T did remove the action, the law is unsettled as to whether its pending state garnishment action qualifies as a "civil action" that is removable pursuant to 28 U.S.C. § 1441.[3]

Accordingly, plaintiff's motion for reconsideration (docket no. 31) is **DENIED**.

**IT IS SO ORDERED.**

Dated:  December 15, 2008           /s/ Hugh W. Brenneman, Jr.
                                    HUGH W. BRENNEMAN, JR.
                                    United States Magistrate Judge

---

[3] *See, e.g., Harding Hospital v. Sovchen*, 868 F. Supp. 1074 (S.D. Ind. 1994) (concluding that an Indiana state garnishment proceeding was a "civil action" for purposes of removal under § 1441); *contra, Overman v. Overman*, 412 F. Supp. 411 (E.D. Tenn. 1976) (a garnishment proceeding in Tennessee should not be treated as a "civil action" for purposes of the federal removal statute; garnishment is an ancillary proceeding because it must be based upon a valid, unsatisfied judgment and execution).  The status of the law in this area was aptly described by one court, which observed that judicial opinions regarding removal of state court garnishment cases are "hopelessly divided in their results and reasoning, some looking to state law to determine whether garnishment is regarded as ancillary or independent, others making their own independent judgment, informed but not concluded, by the states' characterization, and in both cases, coming out on both sides of the issue of removability." *International Org. of Masters, Mates & Pilots of America, Local No. 2 v. International Org. of Masters, Mates & Pilots of America, Inc.*, 342 F. Supp. 212, 214 (E.D. Pa. 1972) (footnotes omitted).