UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (GRAND RAPIDS)

DEARBORN STREET BUILDING ASSOCIATES LLC, an Illinois limited liability company,

Plaintiff,

Civil Case No. 1:07-CV-1056

Hon. Hugh W. Brenneman, Jr.

v

D & T LAND HOLDINGS LLC, a Michigan limited liability company; PCI HOLDINGS, LLC, a Michigan limited liability company; and THE HUNTINGTON NATIONAL BANK, a national banking association,

Defendants

Thomas R. Morris (P39141)
SILVERMAN & MORRIS, P.L.L.C.
Attorneys for Plaintiff
7115 Orchard Lake Road, Suite 500
West Bloomfield, MI 48322
(248) 539-1330

Paul A. McCarthy (P47212)
RHOADES MCKEE
Attorneys for Defendant Hungington National Bank
600 Waters Building
161 Ottawa Avenue, N. W.
Grand Rapids, MI 49503
(616) 235-3500

Matthew L. Vicari (P44049)
Monica C. Inhulsen (P66124)
MILLER JOHNSON
Attorneys for D&T Land Holdings LLC
250 Monroe Ave., NW Suite 800
Grand Rapids, MI 49503
(616) 831-1700

Jeffrey G. Muth (P65041)
BARNES & THORNBURG LLC
Attorneys for Defendant PCI Holdings LLC
300 Ottawa Ave., NW Suite 500
Grand Rapids, MI 49503
(616) 742-3930

**DEFENDANT THE HUNTINGTON NATIONAL BANK'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS TO FED. R. CIV. P. 11**

## INTRODUCTION

Plaintiff Dearborn Street Building Associate's claims against The Huntington National Bank ("Huntington" or "the bank"), recently dismissed by the Court's January 6, 2009 Opinion and Order, were frivolous and warrant sanctions under Fed. R. Civ. P. 11. Although none of Plaintiff's claims were asserted against Huntington, Plaintiff nonetheless "tossed in" Huntington as a defendant in this lawsuit. From the outset of this case, Huntington requested that Plaintiff voluntarily dismiss it from this action, as none of the claims applied to it, and there was no legal basis for Huntington's inclusion as a defendant. Despite numerous attempts by Huntington's counsel to obtain a voluntary dismissal from Plaintiff and its counsel, Plaintiff refused. To create incentive for Plaintiff to dismiss the lawsuit, Huntington served Plaintiff with its Motion for Sanctions pursuant to Fed. R. Civ. P. 11(c)(2) in June of 2008. Plaintiff again failed to withdraw its Complaint against Huntington. In September of 2008, Huntington moved for Summary Judgment. Even then, Huntington again sought Plaintiff's stipulation to dismiss this action against Huntington with prejudice and without costs. Plaintiff still refused. Huntington now moves for sanctions against Plaintiff and, regrettably, its counsel pursuant to Fed. R. Civ. P. 11(c)(2).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated the present action against PCI, D&T, and Huntington on October 22, 2007. In its Amended Complaint,[1] Plaintiff alleged two counts of Fraudulent Transfer in violation of the Uniform Fraudulent Transfer Act ("UFTA"). Plaintiff's first count under the UFTA alleged that the sale of property by PCI to D&T was made with the actual intent to hinder,

[1] On October 30, 2007, this Court ordered Plaintiff to amend its Complaint because Plaintiff failed to establish that diversity jurisdiction existed in the case. The Court ordered the Plaintiff to cure the defect within fourteen (14) days or the complaint would be dismissed. *See* Court Order dated October 30, 2007.

delay or defraud creditors, specifically Plaintiff.[2] Plaintiff's second count under the UFTA alleged that D&T did not pay PCI reasonably-equivalent value for the sale of the property; more specifically that D&T never paid PCI the $155,143.64 promissory note payment(s) reflected in the sale documents.[3] Plaintiff's third count, to enforce a Garnishment, alleged that D&T should be forced to turn over the remaining payments owed to PCI for the real estate purchase to Plaintiff as a judgment creditor.[4] The Garnishment claim was subsequently dismissed by the Court.[5] Plaintiff's Amended Complaint asserted no claim against Huntington.

Given the lack of any claim asserted against it, counsel for Huntington immediately requested that Plaintiff dismiss it from this lawsuit in its Answer and Affirmative Defenses to Plaintiff's Amended Complaint, filed on November 14, 2007.[6] Specifically, Huntington's Affirmative Defense No. 5 states:

> Huntington National Bank understands, through discussion between its counsel and counsel for Plaintiff, that n**<u>o claim is made against, nor is any remedy sought from, Huntington National Bank</u>**. Accordingly, Huntington National Bank will **<u>request that Plaintiff voluntarily dismiss this matter so as to avoid the necessity of a motion to dismiss.</u>**

Plaintiff, however, refused to stipulate to dismiss Huntington, and insisted that the case proceeded.

By the time of the Rule 16 Scheduling Conference on February 6, 2008, Plaintiff still could not articulate a viable claim against Huntington. In the Joint Status Report from the Rule 16 Conference, Plaintiff described its case as follows:

---

[2] Pl's Am. Compl. ¶ 20.
[3] Pl's Am. Compl. ¶ 22.
[4] Plaintiff's Count III for garnishment was previously dismissed by this Court for lack of jurisdiction.
[5] *See* Order dated June 9, 2008, and Order dated December 15, 2008, denying Plaintiff's motion for reconsideration of that decision.
[6] *See* Def. Huntington's Answer to Am. Compl. and Affirmative Defense No. 5.

> Plaintiff holds a judgment against . . . **PCI** . . . **PCI** transferred certain real property to . . . **D & T**. . . In order to avoid having any portion of the purchase price go to Plaintiff, **PCI** and **D & T** agreed between themselves to forgive this portion of the purchase price . . . Plaintiff also claims that **D & T** owes to **PCI** the sum of no less than $155,143.64, which represents consideration agreed by **D & T** to be paid to **PCI** . . . Plaintiff served a writ of garnishment on **D & T**, and Plaintiff claims that **D & T** is liable to Plaintiff in at least that amount pursuant to the writ of garnishment.[7]

Glaringly absent from Plaintiff's description of its case is any allegation against Huntington.

For its part, Huntington reiterated its position in the Joint Status Report that no claim had actually been asserted against it, that it was in the process of providing its file to Plaintiff, and that it was requesting dismissal from the case:

> Position of Huntington National Bank. The **Bank is not a named party on any claim in this case**, but rather, appears to have been sued purely as a matter of notice. The Bank is in the process of providing its file for review by Plaintiff's counsel and has **requested that it be dismissed** from this case.[8]

The Bank subsequently provided Plaintiff's counsel with its file for review on February 18, 2008.[9]

On January 18, 2008, counsel for Huntington had a detailed telephone conference with Plaintiff's counsel regarding the lack of any cognizable claim having been asserted and again asked that Plaintiff dismiss Huntington from the case. This conversation is reflected in counsel's billing records, which are attached as **Exhibit E** (see p. 3).

A month later, and having not heard back from Plaintiff's counsel, on February 20, 2008, counsel Huntington again requested dismissal from the case by sending a written Stipulation and

[7] Joint Status Report ¶ 5 (emphasis added).
[8] Joint Status Report ¶ 5 (emphasis added).
[9] *See* February 18 correspondence from attorney McCarthy to counsel of record noting enclosed documents, attached as **Exhibit A.**

Proposed Order of Dismissal to Plaintiff's counsel.[10] The Stipulation and Proposed Order presented Plaintiff with the opportunity to dismiss Huntington from this case, with prejudice but without any costs.[11] Counsel for Huntington again spoke with Plaintiff's counsel on February 29, 2008, regarding Huntington's request to be dismissed.[12] Plaintiff ultimately, however, refused to sign the stipulation of dismissal.

Three months later, following a hearing held on May 29, 2008, counsel for Huntington once more requested counsel for Plaintiff to dismiss Huntington from this lawsuit, given the lack of any claim asserted against it. This request is again documented in defense counsel's billing records, **Exhibit E** (see p. 5). Once more, Plaintiff refused to dismiss Huntington from this action.

After Plaintiff had rebuffed numerous requests to dismiss Huntington from this lawsuit, and in an effort to further encourage it to do so (or suffer the penalty for failing to do so), Huntington invoked the safe harbor rule of Fed. R. Civ. P. 11 by serving Plaintiff (but not filing) its Motion for Rule 11 Sanctions, together with supporting brief, on June 23, 2008.[13] Plaintiff was notified in the correspondence included with the Motion and Brief that, pursuant to Fed. R. Civ. P. 11(c)(2), it would have 21 days from the date of service of the Motion to withdraw its claims against Huntington, and that if such claims were not withdrawn, the Motion for Sanctions would be filed with the Court.[14] The Motion and accompanying Brief specifically explained the conduct that violated Rule 11.[15] However, even in the face of the potential Rule 11 Motion for Sanctions, Plaintiff refused to dismiss Huntington from this case.

---

[10] *See* correspondence, sent via facsimile, from attorney McCarthy to counsel for Plaintiff, along with the attached Stipulation and Proposed Order of Dismissal With Prejudice and Without Costs, attached at **Exhibit B.**
[11] **Exhibit B.**
[12] **Exhibit E**, billing records, p. 4.
[13] **Exhibit C.**
[14] **Exhibit C.**
[15] **Exhibit C.**

Without obtaining Plaintiff's voluntary dismissal, Huntington was forced to continue defend the case in order to protect its interests. On September 8, 2008, Huntington moved for summary judgment of all claims. Plaintiff never responded to the Motion. However, even after filing its Motion for Summary Judgment – and even after Plaintiff failed to even respond to the motion – Huntington, through counsel, sent correspondence to Plaintiff's counsel on October 17, 2008, again offering to resolve the case, ***without costs***, if Plaintiff simply dismissed Huntington with prejudice.[16] Despite Huntington's repeated requests for dismissal, despite Huntington having served Plaintiff with a Rule 11 Motion and brief, and despite a pending summary judgment motion which Plaintiff did not oppose, **EVEN THEN** Plaintiff refused to accept Huntington's offer.

This Court recently granted Huntington's Motion for Summary Judgment in its January 6, 2009 Opinion and Order, agreeing that Plaintiff failed to assert a viable claim against Huntington. Huntington now moves for sanctions under Rule 11.

## LEGAL ARGUMENT

### I. RULE 11 PROVIDES FOR SANCTIONS AGAINST A PARTY AND/OR ITS ATTORNEY FOR CLAIMS FILED WITHOUT A REASONABLE INQUIRY, CLAIMS FILED FOR AN IMPROPER PURPOSE, AND FOR CLAIMS UNWARRANTED BY EXISTING LAW.

Fed. R. Civ. P. 11 spells out the signing requirements as to pleadings, as well as the representations an attorney makes to the court based on his or her signature:

> **(a) Signature.** Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name…
>
> **(b) Representations to the Court. By presenting to the court a pleading,** written motion, or other paper -- whether by signing, filing, submitting, or later advocating it --**an attorney… certifies**

[16] *See* email correspondence from Huntington's counsel, Paul McCarthy, to Plaintiff's counsel, Thomas Morris, dated October 17, 2008, attached as **Exhibit D.**

> that to the best of the person's knowledge, information, and belief, formed **<u>after an inquiry reasonable under the circumstances</u>**:
>
> **(1) <u>it is not being presented for any improper purpose</u>**, such as to harass, cause unnecessary delay, or **<u>needlessly increase the cost of litigation</u>**;
>
> **(2)** the **<u>claims</u>**, defenses, **<u>and other legal contentions are warranted by existing law or by a nonfrivolous argument</u>** for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3) <u>the factual contentions have evidentiary support</u>** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…

Fed. R. Civ. P. 11(a), (b) (emphasis added). As the Sixth Circuit has noted: "Rule 11 is concerned with an attorney's certification to the court, by signing a pleading or other court paper, that the attorney believes on the basis of reasonable inquiry that there is a reasonable basis in law and fact for the position taken . . . ." *Jackson v Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F2d 1224, 1229 (CA 6, 1989).

"The court judges the attorney's conduct by an 'objective standard of reasonableness under the circumstances.'" *Jackson, supra*. (citations omitted). The objective reasonableness inquiry required by the Rule is not a "one time obligation." *Herron v Jupiter Transportation Co.*, 858 F2d 332, 335 (CA 6, 1988). Rather, a party has a continuing responsibility to review and evaluate pleadings, motions and other papers and to immediately dismiss an unsupportable claim, or risk the imposition of Rule 11 sanctions. *Herron, supra* at 335-336.

The provisions of Rule 11 also set forth the sanctions which may be imposed upon an attorney, law firm, and/or party for violating subsection (b) of the Rule:

> (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, **<u>the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule</u>** or is responsible for the violation. Absent exceptional circumstances, **<u>a law firm must be</u>**

> **<u>held jointly responsible for a violation committed by its partner, associate, or employee</u>**.
>
> * * * *
>
> (4) *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; **<u>or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation</u>.**

Fed. R. Civ. P. 11(c) (emphasis added). A court may impose sanctions against the attorney, law firm, and party jointly and severally for a violation of Rule 11(b), unless the sanction relates only to a violation of Rule 11(b)(2), in which case the sanction may only be against the attorney and/or law firm. *Cramer v City of Detroit,* 267 Fed Appx 425, 426 (CA.6, 2008); *Mohammed v Union Carbide Corp.,* 262 F Supp 252, 261 (DC Mich, 1985); Fed. R. Civ. P. 11(c)(5). The sanctions provided in Rule 11 work to carry out the two goals of the Rule: deterrence and compensation. *Jackson, supra* at 1229.

Sanctions are appropriate when a plaintiff files claims unsupported by law, or refuses to dismiss a defendant from a case after failing to support its claim with factual evidence. In *Neal v Electronic Arts, Inc.,* 374 F Supp 2d 574 (WD Mich, 2005), plaintiff brought suit against defendant, alleging claims for invasion of privacy by appropriation, invasion of privacy by false light, and defamation based on defendant's use of plaintiff's likeness in a video game. Defendant moved for summary judgment and sanctions pursuant to Rule 11.

In addressing defendant's motion for summary judgment, the court articulated the legal and factual deficiencies of plaintiff's claims against defendant. Specifically, the court held that plaintiff's claim for invasion of privacy by appropriation was not viable, based on the contract executed by plaintiff with the National Football League specifically authorizing the use of

plaintiff's likeness in video games. *Neal, supra* at 578-579. As to plaintiff's false light claim, the court stated that it found no case law to support plaintiff's position. *Neal, supra* at 579. Moreover, the court rejected plaintiff's argument that the use of his picture in place of a Caucasian player is highly offensive, as such argument was "simply contrary to the well-established history of the judiciary not to condone theories of recovery which promote racial prejudice or effectuate discriminatory conduct." *Neal, supra* at 579 (citations omitted). Finally, as to plaintiff's defamation claim, the court again noted the lack of case law to support plaintiff's claim. *Neal, supra* at 580. As a result, the court granted summary judgment to defendant. *Neal, supra* at 580.

After granting summary judgment, the court addressed the defendant's motion for sanctions under Rule 11. Defendant argued that plaintiff's claims were not warranted by existing law, and that plaintiff's counsel was advised by letter to stipulate to a dismissal of his Complaint because it clearly failed to state a claim. *Neal, supra* at 580. However, plaintiff refused to dismiss the claims, and instead filed an amended complaint asserting additional allegations.

In light of the legal deficiencies recognized by the court in its ruling on defendant's motion for summary judgment, the court granted defendant's motion for sanctions under Rule 11. *Neal, supra* at 581. The court held that plaintiff's counsel filed a claim that he knew or should have known was frivolous. *Neal, supra* at 581. As a result, the court held that plaintiff's counsel's conduct constituted a violation of Rule 11(b)(2), and sanctions were warranted. *Neal, supra* at 581.[17]

[17] *See also Flaherty v Gas Research Institute*, 31 F3d 451 (CA 7, 1994) (holding that district court did not abuse its discretion in finding that counsel violated Rule 11 when he reasserted a claim after having been advised by opposing counsel of case law requiring dismissal of such claim).

Similarly, the Sixth Circuit, in *Herron v Jupiter Transportation Co.*, 858 F2d 332 (CA 6, 1988), affirmed an award of Rule 11 sanctions in favor of defendants. In *Herron*, the plaintiffs brought claims against defendants for breach of a collective bargaining agreement. Defendants, via letter, informed plaintiffs' counsel early in the case that the complaint was factually inaccurate and unsupported in law. The letter also notified plaintiffs' counsel that they would seek attorney's fees for defending the action. Plaintiffs' counsel ignored the letter. Defendants advised plaintiffs' counsel several other times that the claims lacked legal and factual support, and directed him to existing legal precedent to verify its assertions. Again, plaintiffs' counsel ignored the defendants' warnings.

After deposing four of the plaintiffs, defendants moved to dismiss the complaint for failure to state a claim. Thereafter, at a status conference, plaintiffs' counsel informed defendants and the court that his clients wanted to dismiss the claims, but were concerned that defendants would seek attorney's fees. Defendants agreed to execute a release, exonerating plaintiffs from the payment of attorney's fees, and plaintiffs' counsel was directed by the court to prepare the release and dismissal documents. Plaintiffs' counsel failed to prepare the documents as directed, and defendants thereafter served him with their motion for sanctions under Rule 11. Plaintiffs' counsel also failed to respond to the Rule 11 motion, and the court awarded attorney's fees to defendants of over $9,000.00.

On appeal, the Sixth Circuit noted that Rule 11 "stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances." *Herron, supra* at 335 citing to Advisory Committee Note, Fed. R. Civ. P. 11. The court also noted the continuing obligation of the litigant and attorney to review and reevaluate their pleadings, and that upon the discovery

that such pleading is without merit, to "immediately dismiss the action at the risk of inviting the imposition of Rule 11 sanctions. *Herron, supra* at 336 citing *Younkers v Otis Elevator*, 844 F2d 42, 49 (CA 2, 1988). Finally, the court pointed to other Sixth Circuit case law, including to *Albright v Upjohn Co.*, 788 F2d 1217, 1221, n 7 (CA 6, 1986), wherein the court stated there was a Rule 11 violation because "Albright asserted her claim for liability against Upjohn with the knowledge that she had no factual basis for the claim, and continued to assert the claim long after it would have been reasonable to have dismissed it." *Herron, supra* at 336.

Looking to the case before it, the court noted that all of the defendants advised plaintiffs' counsel at the outset of the case that the complaint was not anchored in fact or warranted by existing law. *Herron, supra* at 337. Moreover, the court stated that minimal inquiry into the facts would have disclosed that the complaint was without legal or factual support. *Herron, supra* at 337. As a result, the court found no abuse of discretion as to the imposition of sanctions under Rule 11 by the trial court. *Herron, supra* at 337.

As to the amount of attorney's fees awarded, plaintiffs' counsel argued that the fees should have been computed from the status conference to the dismissal of the case, representing the time period from when plaintiffs' counsel agreed to dismiss the action, and the final disposition of the case. The Sixth Circuit disagreed. The court pointed to the numerous opportunities presented to plaintiffs' counsel to dismiss the action and avoid the sanctions, including his decision to ignore the court's direction to prepare the dismissal documents. *Herron, supra* at 337. Because the complaint was not supported by law, and because plaintiffs' counsel repeatedly ignored the court's and counsel's requests to dismiss the action, the court

affirmed the trial court's award of attorney fees from the inception of the case. *Herron, supra* at 337.[18]

## II. PLAINTIFF'S CLAIMS AGAINST HUNTINGTON WERE MADE WITHOUT REASONABLE INQUIRY, NEEDLESSLY INCREASED THE COST OF THIS LITIGATION, WERE UNWARRANTED BY EXISTING LAW, AND THEREFORE SANCTIONS SHOULD BE IMPOSED UNDER RULE 11.

As explained in Huntington's Brief in Support of Motion for Summary Judgment, and agreed to by this Court in its January 6, 2009 Opinion, Plaintiff did not even assert a cause of action against Huntington in this matter. Although Huntington was included as a defendant, there was no basis for its inclusion in this lawsuit. As made clear in the above Factual and Procedural Background, Plaintiff was put on notice of its lack of claim against Huntington from the very beginning of this litigation, and counsel for Huntington presented Plaintiff with numerous opportunities to dismiss its Complaint as asserted against Huntington, without costs. Huntington turned over file materials to Plaintiff in response to the Court's Case Management Order, which material further supported its position that Plaintiff had no basis for including it in this case. Unfortunately, despite Huntington's numerous attempts to secure Plaintiff's voluntary dismissal of this action, Plaintiff and its counsel refused.

There can be no doubt that Plaintiff's refusal to dismiss Huntington from this case resulted in the needless increase in the cost of this litigation. First, it is clear that Huntington should have never been included as a defendant from the outset of this case. Plaintiff did not even assert a claim against it, but simply lumped Huntington in with the other defendants in its request for relief. Improperly including Huntington in this matter required Huntington to incur fees and costs in responding to the Complaint and otherwise participating in the proceedings of this case. The bank simply should never have been a party in this action. Therefore, all of the

[18] *See also Nieves v City of Cleveland*, 153 Fed Appx 349 (CA 6, 2005) (awarding sanctions from inception of case).

costs and fees incurred by Huntington in this matter were needless and a result of Plaintiff's failure to properly investigate the legal and factual basis for including Huntington in this lawsuit.

Moreover, even after Plaintiff was notified of its improper inclusion of Huntington, and presented with numerous opportunities to dismiss Huntington without incurring any costs, Plaintiff refused. Plaintiff and its counsel (against whom Huntington takes no joy out of including in this motion) had ample opportunity and time to analyze the claims and review the documents to conclude that Huntington should be dismissed, and yet continually refused, thereby further increasing the cost of this litigation without good reason. The needless increase in the cost of this litigation is further displayed by the fact that Plaintiff was forced to file a Motion for Summary Judgment, to which Plaintiff did not even respond. Huntington should not be forced to incur the costs of Plaintiff's frivolous claims against it, especially in light of the numerous opportunities given to Plaintiff and its counsel to simply dismiss Huntington from this case without costs.

In addition, as to Huntington, Plaintiff's claims were not warranted by existing law, or by a nonfrivolous argument for the extension, modification, or reversal of existing law. As made clear in Huntington's Motion for Summary Judgment, and reiterated in this Court's Opinion and Order granting the motion, Plaintiff's claims under the UFTA were asserted against PCI, and such claims can only be asserted against PCI as the debtor. Just as in *Neal*, the fact that Huntington's Motion for Summary Judgment was granted only further supports the fact that Plaintiff's claims were not warranted by existing law. There is simply no argument that Plaintiff's clams under the UFTA were warranted as asserted against Huntington, and therefore Plaintiff filed its UFTA claims in violation of Rule 11(b)(2).

As noted in the case law cited above, in analyzing a Motion under Rule 11, this Court must judge Plaintiff's and its counsel's conduct by an objective standard of reasonableness. That the conduct of Plaintiff and its counsel was entirely unreasonable in this case is exemplified by their rejection of Huntington's offer to dismiss the claims, without costs, even after Huntington had already served its Motion for Sanctions ***and*** filed its Motion for Summary Judgment. Even that last minute good-faith effort by Huntington to avoid having to file this Motion against Plaintiff and its counsel was inexplicably rejected, thereby solidifying the truly unreasonable actions of Plaintiff and its counsel in this case.

Because Plaintiff clearly violated Rule 11(b) when it filed and maintained its claims against Huntington, sanctions are appropriate under Rule 11(c). As a consequence of Plaintiff's and its counsel's violation of Rule 11, Huntington was forced to incur all of the fees and costs associated with this matter. Simply stated, as against Huntington, this lawsuit was frivolous from the start. In this regard, the decision in *Herron* is particularly instructive. Just as the plaintiffs' claims in *Herron*, Plaintiff's claims against Huntington were completely without merit and unwarranted under existing law. As in *Herron*, Plaintiff and its counsel were presented with numerous opportunities to simply dismiss Huntington from this matter and thereby avoid any sanctions. The fact that Plaintiff and its counsel continually refused, even when they were presented with the opportunity to dismiss Huntington without costs as late as October of 2008, justifies an award of sanctions in favor of Huntington in the amount of costs and fees it has incurred in dealing with this frivolous complaint, just as it did in *Herron*.

To date, Huntington has been billed $12,271.00 in attorneys' fees, and $1,122.39 in costs, for a total of $13,393.39 (together with unbilled time through January 9, 2009 of $680). These

amounts are reflected in the detailed time and cost summaries, attached as **Exhibit E.**[19] These amounts do not include the time Huntington's attorneys have spent drafting the present Motion and Brief, and the time spent to attend the hearing on this Motion (should a hearing be held), all of which are recoverable by Huntington as fees reasonably incurred in defending against Plaintiff's frivolous claims. *See, for e.g., B & H Medical, L.L.C. v ABP Admin., Inc.,* 354 F Supp 2d 746, 750 -751 (ED Mich, 2005) (awarding to defendants, as part of the sanction against plaintiff, the attorneys' fees incurred in the preparation and filing of their motion for Rule 11 sanctions). Huntington's counsel will provide this Court with the final costs and fees incurred at the time this matter is argued to the Court, if argument is held, or in a subsequent filing after the fees and costs can be tabulated (if oral argument is not held). All of these fees and costs would have been avoided had Plaintiff and its counsel complied with Rule 11 and made a reasonable inquiry into the legal basis for their claims.

## CONCLUSION

Defendant The Huntington National Bank respectfully requests this Court find that Plaintiff and (regrettably) its counsel violated Fed. R. Civ. P. 11(b), and impose sanctions in favor of Huntington and against Plaintiff and its counsel Silverman & Morris, jointly and severally, in the amount of $13,393.39, together with the fees incurred by Huntington in preparing and arguing the present Motion and Brief, and award it all other relief deemed equitable and just under the circumstances.

[19] It should be noted that more than 12% of the original billing amount, as reflected in the time recorded on **Exhibit E**, was written off at the time of billing (from an original worked amount of $13,976 to a billed amount of $12,271). These reductions principally related to review of the bank's file and the preparation of the Rule 11 motion. The Court should note, however, that the rate for Huntington's work is significantly below market in the first instance. For example, the overall rate for the original amount worked is $144 per hour; as billed, the rate is $126 per hour. In contrast, the standard hourly rate for undersigned counsel is $280. ***There can be no reasonable claim that the fees billed by Rhoades McKee in this case are anything but low***.

Dated: January 17, 2009

Respectfully submitted,

RHOADES McKEE
Attorneys for Defendant The Huntington National Bank

By: */s/ Paul A. McCarthy*
Paul A. McCarthy (P47212)