UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEARBORN STREET BUILDING
ASSOCIATES LLC,

    Plaintiff,

vs.

D & T LAND HOLDINGS, LLC;
PCI HOLDINGS, LLC; and,
THE HUNTINGTON NATIONAL
BANK,

    Defendants.
    _____/

Case No. 1:07-cv-1056

Hon. Hugh W. Brenneman, Jr.

**ORDER**

This matter is now before the court on the Huntington National Bank's motion for sanctions pursuant to Fed. R. Civ. P. 11 (docket no. 54), on the ground that plaintiff's claims against the bank were brought without reasonable inquiry, were unwarranted by existing law and needlessly increased the cost of the litigation.

By way of background, the court granted The Huntington National Bank's motion for summary judgment on January 6, 2009 for the following reasons:

> Defendant Huntington National Bank ("Huntington") seeks summary judgment pursuant to Fed. R. Civ. P. 56(c), on the ground that plaintiff Dearborn Street Building Associates LLC ("Dearborn") does not assert a cause of action against it. The court agrees. Dearborn's remaining two counts are brought pursuant to UFTA. Count I is brought pursuant to M.C.L. § 566.34 ("Fraudulent transfer or obligation, generally; determination of actual intent") and Count II is brought pursuant to M.C.L. § 566.35 ("Fraudulent transfer or obligation; claim of creditor arising prior to transfer or obligation"). Both of these statutes apply to a "debtor," which is defined as "a person liable on a claim." M.C.L. § 566.31(f). For purposes of both Counts I and II, the "debtor" is PCI, i.e. Dearborn's judgment debtor. Dearborn's amended complaint does not claim that Huntington is a debtor or that this

> defendant violated UFTA. Dearborn's only allegation against Huntington is that this defendant has an interest in the property as a mortgagee, an interest which Huntington admitted in its answer to the amended complaint. *See* docket no. 6. And again, plaintiff does not allege its claim has priority over Huntington's mortgage lien. The fact that Huntington has an interest in the property is insufficient to support a claim against this defendant for violation of UFTA. Dearborn has not responded to Huntington's motion, let alone provided an affidavit or any other document to support a claim against Huntington.

Opinion at 4-5 (docket no. 48).[1]

Huntington seeks sanctions pursuant to Fed. R. Civ. P. 11(b), which provides in pertinent part as follows:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

---

[1] For purposes of this order, the court will refer to Michigan's version of the Uniform Fraudulent Transfer Act, M.C.L. § 566.31 *et seq.*, as "UFTA."

"[T]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the district court that this document is to be taken seriously." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 546 (1991). The imposition of Rule 11 sanctions require a showing of objectively unreasonable conduct. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002). Huntington invoked the safe harbor provision of Rule 11 on June 23, 2008, by serving a motion on plaintiff by mail pursuant to Rule 5 for Rule 11 sanctions, together with a supporting brief, maintaining that plaintiff named the bank as a defendant in its complaint without asserting any claims against it. Plaintiff thereafter took no action to withdraw or correct its pleading.

Plaintiff contends that it properly named Huntington as a defendant, because the bank was a "necessary party" to this action, due to its position as a lien holder on the property subject to the alleged fraudulent conveyance claim brought pursuant to M.C.L. § 566.34 and 35. Plaintiff relies on *Ocwen Federal Bank, FSB v. International Christian Music Ministry, Inc.*, No. 249081, 2004 WL 1533872 (July 8, 2004) in support of its position. Because the *Ocwen* decision (and a subsequent related federal case) address the issue of a mortgagee's position in a fraudulent conveyance action, the court will review the decision in detail.[2]

*Ocwen* involved two lawsuits which addressed the ownership of certain real estate located in St. Clair County, Michigan. The real estate at issue was originally conveyed in 1993 to

---

[2]The court notes that plaintiff did not address the facts of the *Ocwen* decision or explain its relevance to the issues raised in Huntington's motion.

the "Unity Community an Organization of the International Christian Music Ministry, Inc." ("Unity Community"). In 1995 and 1996, Unity Community's president conveyed the property to himself and his wife and mortgaged the property for $200,000.00. The mortgage was subsequently assigned to the plaintiff, Ocwen. In 1996, the International Christian Music Ministry, Inc. ("ICMM") filed a lawsuit against Unity Community in the Wayne Circuit Court for breach of contract. As part of that litigation, ICMM filed a motion on June 24, 1999, to convey the St. Clair property to it pursuant to UFTA. Ocwen, unaware of the UFTA action pending in the Wayne Circuit Court, foreclosed the mortgage and secured a sheriff's deed to the property on July 23, 1999. The Wayne Circuit Court issued an order conveying the property to ICMM and its attorney (Percy Lewis) on September 3, 1999, which was modified on April 13, 2000, to state that the declaration of homestead on the property was void. Ocwen was not a party to the Wayne Circuit Court lawsuit and did not know of ICMM and Lewis' interest in the property. Ocwen and ICCM and Lewis attempted to negotiate a settlement, but failed.

In December 2001, Ocwen filed suit in the St. Clair Circuit Court to determine interest in the property. Shortly thereafter, Ocwen attempted to intervene in the Wayne Circuit Court action to set aside the conveyance. However, the Wayne Circuit Court judge informed the parties "that they should take care of the lawsuit in St. Clair County, where the property is located." *Ocwen*, 2004 WL 1533872 at *2. On April 30, 2003, the St. Clair Circuit Court quieted title in Ocwen, finding "that at the time of the Wayne County lawsuit, Ocwen was a necessary party in interest and its joinder in the action was compulsory under MCR 2.205." *Id.*

The issue before the Michigan Court of Appeals was whether the St. Clair Circuit Court judge properly declared the Wayne Circuit Court judge's order of conveyance to be null and

4

void. In resolving this issue, the appellate court found that Ocwen was a necessary party to the UFTA action in the Wayne Circuit Court :

> As both the trial court and plaintiff noted, plaintiff should have been included in the Wayne County lawsuit as soon as the property became an issue. Under MCR 2.205, plaintiff was a necessary party because it had "such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief" and thus was required to be made a party. MCR 2.205. The deed to the property upon which plaintiff held a mortgage was declared void. Nonetheless, plaintiff was never a party to the lawsuit in Wayne County.

*Ocwen*, 2004 WL 1533872 at *3. After reaching this determination, the appellate court concluded that "[a]lthough certainly very frustrating to both parties," only the Wayne Circuit Court judge could set aside or vacate the order of conveyance.

The Michigan Supreme Court summarily reversed and remanded this case to the Michigan Court of Appeals, stating in pertinent part:

> Plaintiff was not a party to the prior action in the Wayne Circuit Court, and that proceeding did not determine plaintiff's right to the property. As a result, the St. Clair Circuit Court's order did not have the effect of setting aside or rendering "null and void" the order of the Wayne Circuit Court. Rather, under the facts of this case, the St. Clair Circuit had plenary authority pursuant to MCL 600.2932 to vest title in the plaintiff.

*Ocwen Federal Bank, FSB v. International Christian Music Ministry, Inc.*, 472 Mich. 923, 697 N.W.2d 155 (2005).[3] On remand, the Michigan Court of Appeals affirmed the St. Clair Circuit

---

[3] The Michigan legislature has established a statutory cause of action to quiet title pursuant to M.C.L. § 600.2932(1), which provides states that "[a]ny person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff." This statute codifies actions to quiet title and authorizes suits to determine competing parties' respective interests in land. *Sumpter v. United States*, 302 F. Supp.2d 707, 719 (E.D. Mich. 2004) (citation omitted).

5

Court's order vesting title in Ocwen. *See Ocwen Federal Bank, FSB v. International Christian Music Ministry, Inc. (on Remand)*, No. 249081, 2005 WL 2465807 (Mich. App. Oct. 6, 2005).

After failing to prevail in the state court, ICMM sought relief against Ocwen in the federal district court, which dismissed the action. *See International Christian Music Ministry Inc. v. Ocwen Federal Bank, FSB*, No. 06-14310, 2007 WL 2463228 (E.D. Mich. Aug. 28, 2007). The Sixth Circuit affirmed on appeal, stating in pertinent part:

> Undeterred [by adverse decision in the Michigan state courts], ICMM filed a complaint in federal court that characterized its claim: "This is a lawsuit to determine who owns the real property." It essentially argued the correctness of the state court of appeals' first holding, asking the district court to declare it "the lawful owner of the property." Ocwen responded with a legion of defenses, and the district court agreed it should dismiss the case because the state courts resolved the dispositive ownership issue.
>
> \*   \*   \*
>
> ICMM's suggestion that the Michigan Supreme Court somehow left alive the Wayne County order ignores the very next sentence in the court's decision confirming that the St. Clair court "had plenary authority" under Michigan's quiet-title statute to vest title in Ocwen. That explanation should have tipped ICMM that the Wayne County order was not rendered "null and void" as between the parties to that suit -- ICMM, Percy Lewis, and Unity Community--but had no bearing on Ocwen's superior property rights.

*International Christian Music Ministry Inc. v. Ocwen Federal Bank, FSB*, 289 Fed. Appx. 63, 64-65 (6th Cir. 2008).

The *Ocwen* line of cases does not support plaintiff's contention that a mortgagee is a necessary party under UFTA for determining a creditor's right to fraudulently transferred property. *See Estes v. Titus*, 481 Mich. 573, 586-87, 751 N.W.2d 493 (2008) (citing *Ocwen*, 472 Mich. 923, the Michigan Supreme Court observed that "The UFTA specifically provides for avoiding a fraudulent transfer or attaching a particular fraudulently transferred asset. <u>Relief under the UFTA

6

determines only the creditor's right to fraudulently transferred property.") (footnotes omitted and emphasis added). The court's conclusion that Huntington is not a necessary party is in line with the general rule that a mortgagee is not necessary party in a fraudulent conveyancing action. *See* 27 Am. Jur. 2d, *Fraudulent Conveyances and Transfers*, § 193 "Lienholders and assignees" ("[a]lthough there is authority that a mortgagee or other lienholder is a necessary party defendant in a suit to set aside a fraudulent conveyance, generally, a bona fide lienholder is not a necessary party defendant") (footnotes omitted). Because Huntington was not a necessary party to plaintiff's UFTA action, the court rejects plaintiff's contention that it had to name Huntington as a defendant in this action. It may be prudent for a creditor to include a mortgagee in an UFTA action, e.g., if the creditor possessed a lien in the real estate superior to that of the mortgagee, if the creditor could demonstrate that the mortgagee was not a bona fide lienholder, or if the creditor sought to quiet title in the property, but plaintiff neither alleged such claims nor pursued Huntington on these grounds.

In its "response to Huntington National Bank's reply brief,"[4] plaintiff's counsel suggests for the first time that Huntington might not have been a bona fide lienholder, stating "it was not, and is not, a foregone conclusion that Huntington Bank's mortgage would withstand a challenge." *See* docket no. 63 at 2. It appears that plaintiff was willing to dismiss Huntington if the bank provided an affidavit "attesting to facts explaining its involvement in the fraudulent transfer." *See* docket no. 57 at 3. Because Huntington declined to furnish such an affidavit (which would appear to be an admission to complicity in the alleged fraudulent transfer), plaintiff asserts that "the question remains whether Huntington Bank participated in a conspiracy to fraudulently

---

[4] Plaintiff's counsel is not entitled to file a "response" to a reply absent a court order. *See* W.D. Mich. LCivR 7.2(c). However, given the paucity of legal argument presented by plaintiff on the sanctions issue, the court will review the arguments as set forth in this response.

7

transfer the property." *Id.* at 4. While plaintiff suggests that evidence presented at trial might support an UFTA claim against Huntington, it failed to pursue any such claim while Huntington was a party to the litigation.

In addition, plaintiff apparently blames the court for preventing it from conducting discovery in this action:

> Shortly after filing its first amended complaint, Dearborn Street filed a motion for partial summary judgment. While awaiting a ruling on that motion, Dearborn Street did not take depositions. Upon receiving a ruling on that motion, Dearborn filed a motion for reconsideration. While awaiting a ruling on the motion for reconsideration, Dearborn Street did not take depositions. The discovery deadline thus passed without Dearborn Street taking depositions. Following the close of discovery, Dearborn Street was prepared to agree to dismissal of Huntington Bank had it supplied the agreed affidavit. When Huntington Bank instead filed its motion for dismissal, Dearborn Street was not in a position to make a strong showing as to an issue of fact as to Huntington Bank's good faith. Following the trial on February 23, it is now apparent that there is a genuine issue as to Huntington Bank's good faith.

Docket no. 63 at 3.

Plaintiff's arguments are not persuasive. Plaintiff had ample time to conduct discovery. The case management order entered February 7, 2008, provided for completion of discovery by August 8, 2008, six months later. *See* docket no. 13. Huntington has provided documentation which indicates that discovery commenced shortly after the entry of the case management order. In a letter dated February 18, 2008, the bank transmitted a disk containing 609 pages of documents to plaintiff's counsel. *See* docket no. 55-2. In a letter dated February 20, 2008, the bank submitted to plaintiff's counsel a proposed Stipulation and Order to Dismiss it from the action. *See* docket no. 55-3. Huntington also filed a lay witness list on February 29, 2008. *See* docket no. 20. Then, in a letter dated June 23, 2008, the bank's counsel submitted a "safe harbor" motion to plaintiff's counsel pursuant to Fed. R. Civ. P. 11(c)(2). *See* docket no. 55-4. All of this

8

occurred before the August 8, 2008 discovery deadline. Plaintiff's motion for partial summary judgment, filed on February 27, 2008, involved a garnishment claim unrelated to Huntington's alleged actions. *See* docket no. 16. Even if plaintiff chose not to engage in discovery until the court ruled on its motion for partial summary judgment, the court denied that motion on June 9, 2008, two months before the close of discovery. *See* docket nos. 28, 29, 30.

The parties continued to address the possible dismissal of Huntington after the discovery deadline passed. For example, in a e-mail from dated October 17, 2008, the bank's counsel advised plaintiff's counsel that the bank "is not interested in executing an affidavit, but it is willing to agree to the dismissal of the lawsuit with prejudice and without costs." *See* docket no. 55-5.

Nothing in this record indicates that plaintiff was prohibited from engaging in discovery prior to the August 8, 2008 deadline or that plaintiff sought to extend the deadline. Furthermore, plaintiff's current position appears disingenuous, in light of the fact that plaintiff did not even file a response to Huntington's motion for summary judgment.

Under these circumstances, the court concludes that plaintiff engaged in objectively unreasonable conduct in naming Huntington as a defendant in the amended complaint, when it failed to set forth any allegations against Huntington to establish an UFTA violation, failed to conduct discovery to investigate the possibility of such a claim, and then failed to file any response to Huntington's motion for summary judgment. Accordingly, Huntington is entitled to Rule 11 sanctions in this action

A sanction imposed for a violation of Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P.

11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* Here, Huntington seeks sanctions for (1) its attorney fees billed in this matter in the amount of $12,271.00; (2) unbilled attorney fees of $680.00; and (3) expenses of $1,122.39, for a total amount of $14,073.39. *See* docket nos. 54, 55, 55-6. The court concludes that sanctions in the amount of attorney fees and expenses would be a sufficient amount to deter a repetition of this conduct or comparable conduct by others similarly situated to plaintiff. While plaintiff opposes the imposition of Rule 11 sanctions, it has not disputed the dollar amount requested, which the court finds appropriate.

Accordingly, Huntington's motion for sanctions (docket no. 54) is **GRANTED in part**, and plaintiff and its counsel shall pay sanctions to Huntington in the amount of $14,073.39.[5]

**IT IS SO ORDERED.**


Dated:  September 30, 2009        /s/ Hugh W. Brenneman, Jr.
                                  HUGH W. BRENNEMAN, JR.
                                  United States Magistrate Judge

---

[5] In a supplemental brief, Huntington doubled the amount of its requested attorney fees to $26,009.60, based upon "minimum reasonable hourly rate of $256," an amount far in excess of the actual hourly rate billed to its client. *See* docket nos. 55-6, 56. The court finds this request for attorney fees to be unsupported by the evidence and excessive in this case.